IN RE KOREAN AIR LINES DISASTER
OF SEPTEMBER 1, 1983.

**Philomena DOOLEY, et al.**

v.

**KOREAN AIR LINES CO., LTD.**

No. 96–5278.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 6, 1997.

Decided July 11, 1997.

Rehearing Denied Aug. 7, 1997.

Juanita M. Madole, Irvine, CA, argued the cause and filed the briefs for appellants.

Andrew J. Harakas argued the cause for appellee. With him on the brief was George N. Tompkins, Jr., White Plains, NY.

Before: WALD and RANDOLPH, Circuit Judges, and BUCKLEY, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

On September 1, 1983, while Korean Air Lines flight KE007 was en route from New York City to Seoul, South Korea, via Anchorage, Alaska, a Soviet military aircraft shot down the airliner over the Sea of Japan, killing all 269 people on board. We have recounted details of the tragedy elsewhere. *See In re Korean Air Lines Disaster of Sept. 1, 1983*, 932 F.2d 1475, 1476–79 (D.C.Cir. 1991).

In the ensuing litigation, a joint liability trial on the claims of 137 plaintiffs took place in the United States District Court for the District of Columbia. A jury found that Korean Air Lines had committed "willful misconduct," thus removing the Warsaw Convention's limitations on liability. This court affirmed. *Korean Air Lines Disaster,* 932 F.2d at 1479–84. (We did, however, vacate an award of punitive damages. *Id.* at 1484–90.) The actions were then remanded to the courts in which they had originated for individual proceedings on compensatory damages. This case comes to us as an interlocutory appeal, pursuant to 28 U.S.C. § 1292(b), in five damages actions that have not yet gone to trial.

Early in the damages phase of the litigation, the district court rejected Korean Air Lines's argument that the Death on the High Seas Act, 46 U.S.C.App. § 761 *et seq.*, restricted the damages plaintiffs could recover. As discussed later, the Act permits only certain surviving relatives to recover "pecuniary" losses. The district court believed another law—Article 17 of the Warsaw Convention (*see* Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, art. 17, 49 Stat. 3000, 3018)—"allows for the recovery of all 'damages sustained,' " meaning any "actual harm" any party "experienced" as a result of the crash. Thereafter, the Supreme Court reached a different conclusion: the Warsaw Convention, rather than providing a measure of damages, "permit[s] compensation only for legally cognizable harm, but leave[s] the specification of what harm is legally cognizable to the domestic law applicable under the forum's choice-of-law rules." *Zicherman v. Korean Air Lines Co.,* —— U.S. ——, ——, 116 S.Ct. 629, 637, 133 L.Ed.2d 596 (1996).

After the *Zicherman* decision, Korean Air Lines moved in the district court to dismiss all claims for nonpecuniary damages, including damages for loss of society and mental grief, and damages for the decedents' pre-death pain and suffering. Because *Zicherman* directed lower courts to look to some source of domestic law in a Warsaw Convention case, the district court began with a choice-of-law analysis and concluded that United States law governed these suits. *In re Korean Air Lines Disaster of Sept. 1, 1983,* 935 F.Supp. 10, 12–14 (D.D.C.1996). No party has challenged that determination. The court then ruled that the Death on the High Seas Act provided the applicable U.S.

law, *id.* at 14, and that the Act did not permit the recovery of nonpecuniary damages, *id.* at 14–15.

Plaintiffs detect two faults in the district court's reasoning. While they concede that the Death on the High Seas Act itself provides no right to recover damages for a decedent's pre-death pain and suffering, they believe the "general maritime law" recognizes such a cause of action.· They also interpret a provision of the Death on the High Seas Act as allowing them to proceed under South Korean law despite the district court's undisputed choice-of-law finding that U.S. law applies. The law of South Korea, they say, permits them to recover damages for pre-death pain and suffering and for the mental grief of surviving relatives.

## I

The first section of the Death on the High Seas Act allows the· personal representative of any person who dies as the result of a "wrongful act, neglect, or default occurring on the high seas," to sue "for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative." 46 U.S.C.App. § 761.[1] The next section limits recovery to "a fair and just compensation for the pecuniary loss sustained by the persons for whose benefit the suit is brought." *Id.* § 762.[2] Other sections establish a limitations period, *id.* § 763a, govern actions under foreign law, *id.* § 764, permit a personal injury suit to continue under the Act if the plaintiff dies while the action is pending, *id.* § 765, bar contributory negligence as a complete defense, *id.* § 766, exempt the Great Lakes and state territorial waters from the Act's coverage, *id.* § 767, and preserve certain state law remedies and state court jurisdic-

1. Section 761 states in full:

Whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States, the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative against the vessel,

person, or corporation which would have been liable if death had not ensued.

2. Section 762 provides:

The recovery in such suit shall be a fair and just compensation for the pecuniary loss sustained by the persons for whose benefit the suit is brought and shall be apportioned among them by the court in proportion to the loss they may severally have suffered by reason of the death of the person by whose representative the suit is brought.

tion, *id.; see also Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 220–33, 106 S.Ct. 2485, 2493–2500, 91 L.Ed.2d 174 (1986).

■ That the Death on the High Seas Act does not permit recovery for a decedent's pre-death pain and suffering is clear enough. The Act provides a remedy only for injuries suffered by a limited class of surviving relatives, not the decedent. It is, after all, a "wrongful death" statute, giving survivors a right of action for losses they suffered as a result of the decedent's death, not a "survival" statute, allowing a decedent's estate to recover for injuries suffered by the decedent. *See Nelson v. American Nat'l Red Cross,* 26 F.3d 193, 199 (D.C.Cir.1994); *Calhoun v. Yamaha Motor Corp., U.S.A.,* 40 F.3d 622, 637 (3d Cir.1994), *aff'd,* —— U.S. ——, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996); *McInnis v. Provident Life & Accident Ins. Co.,* 21 F.3d 586, 589 (4th Cir.1994). Pain and suffering is, in any event, nonpecuniary.[3] On the other hand, § 762 of the Act permits only the recovery of "compensation for ... pecuniary loss sustained."

■ Plaintiffs do not quarrel with any of this. But, they say, the Death on the High Seas Act is not the only pertinent source of U.S. law. As they see it, "general maritime law"—a species of federal common law—also applies and it allows a survival action for pre-death pain and suffering independent of any action under the Death on the High Seas Act.

The Supreme Court identified a wrongful death cause of action under the general maritime law in *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). The death in *Moragne* occurred in waters within the state of Florida, *id.* at 376, 90 S.Ct. at 1775, so the Death on the High Seas Act did not apply. The Court held that general maritime law nevertheless provided the decedent's widow with a remedy for wrongful death caused by a violation of federal maritime duties. *Id.* at 409, 90 S.Ct. at 1792. In *Sea–Land Services, Inc. v. Gaudet,* 414 U.S. 573, 585–90, 94 S.Ct. 806, 814–17, 39 L.Ed.2d 9 (1974), in which the death occurred in Louisiana waters, the Court held that recovery in a *Moragne* wrongful death action is not limited to pecuniary damages, as it is in actions under the Death on the High Seas Act. (Although the Court permitted nonpecuniary damages for loss of society in *Gaudet,* it said that "mental anguish or grief ... is not compensable under the maritime wrongful-death remedy," 414 U.S. at 585 n. 17, 94 S.Ct. at 816 n. 17.) A few years after *Gaudet,* the Court held that if a death occurs on the high seas, the Death on the High Seas Act, not general maritime law, governs and therefore nonpecuniary wrongful death damages may not be recovered. *Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 622–26, 98 S.Ct. 2010, 2013–15, 56 L.Ed.2d 581 (1978).

The Supreme Court has declined to say whether the reasoning of *Moragne* may be extended to permit a survival cause of action under the general maritime law. *See Yamaha Motor Corp., U.S.A. v. Calhoun,* —— U.S. ——, —— n. 7, 116 S.Ct. 619, 625 n. 7, 133 L.Ed.2d 578 (1996); *Miles v. Apex Marine Corp.,* 498 U.S. 19, 34, 111 S.Ct. 317, 326–27, 112 L.Ed.2d 275 (1990). We have never addressed the issue. Other courts of

---

**3.** Courts often point to pain and suffering as an example of a nonpecuniary loss. *See, e.g., Eastern Airlines, Inc. v. Floyd,* 499 U.S. 530, 544 n. 10, 111 S.Ct. 1489, 1499 n. 10, 113 L.Ed.2d 569 (1991); *Scarfo v. Cabletron Sys., Inc.,* 54 F.3d 931, 939 (1st Cir.1995); *Korean Air Lines Disaster,* 932 F.2d at 1487. It is therefore strange to find several cases under the Jones Act, 46 U.S.C.App. § 688, describing damages for pre-death pain and suffering as pecuniary. *See, e.g., Furka v. Great Lakes Dredge & Dock Co.,* 755 F.2d 1085, 1090 n. 7 (4th Cir.1985); *Neal v. Barisich, Inc.,* 707 F.Supp. 862, 867 (E.D.La.), *aff'd,* 889 F.2d 273 (5th Cir.1989). The Jones Act applies the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* ("FELA"), to seamen. While FELA and the Jones Act permit only pecuniary wrong-

ful death damages, *see Miles v. Apex Marine Corp.,* 498 U.S. 19, 32, 111 S.Ct. 317, 325–26, 112 L.Ed.2d 275 (1990); *Michigan Cent. R.R. v. Vreeland,* 227 U.S. 59, 68–71, 33 S.Ct. 192, 195–96, 57 L.Ed. 417 (1913), FELA contains a survival provision (45 U.S.C. § 59) allowing recovery of damages for pre-death pain and suffering, *see St. Louis, Iron Mountain & Southern Ry. v. Craft,* 237 U.S. 648, 658, 35 S.Ct. 704, 706, 59 L.Ed. 1160 (1915). Rather than mislabeling pain and suffering as a pecuniary loss in Jones Act cases, it would be more accurate to recognize that under FELA and the Jones Act only wrongful death damages, not survival damages, need be pecuniary. *See Cook v. Ross Island Sand & Gravel Co.,* 626 F.2d 746, 748–49 (9th Cir.1980).

appeals have and a majority of them recognize survival actions. *See, e.g., Barbe v. Drummond,* 507 F.2d 794, 799–800 (1st Cir. 1974); *Wahlstrom v. Kawasaki Heavy Indus., Ltd.,* 4 F.3d 1084, 1093 (2d Cir.1993); *Ward v. Union Barge Line Corp.,* 443 F.2d 565, 569 (3d Cir.1971), *overruled in part on other grounds by Cox v. Dravo Corp.,* 517 F.2d 620 (3d Cir.1975) (en banc); *Greene v. Vantage S.S. Corp.,* 466 F.2d 159, 166 (4th Cir.1972); *Miles v. Melrose,* 882 F.2d 976, 986 (5th Cir.1989), *aff'd sub nom. Miles v. Apex Marine Corp.,* 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990); *Spiller v. Thomas M. Lowe, Jr., & Assocs., Inc.,* 466 F.2d 903, 909 (8th Cir.1972); *Evich v. Connelly,* 759 F.2d 1432, 1434 (9th Cir.1985); *Self v. Great Lakes Dredge & Dock Co.,* 832 F.2d 1540, 1549 (11th Cir.1987).

■ Three courts of appeals have dealt with the availability of a general maritime law survival action for deaths on the high seas. The First and Fifth Circuits have permitted general maritime law survival actions in cases in which the Death on the High Seas Act also applies. *See Azzopardi v. Ocean Drilling & Exploration Co.,* 742 F.2d 890, 893–94 (5th Cir.1984); *Barbe,* 507 F.2d at 799–800. The Ninth Circuit reached the opposite conclusion. *See Saavedra v. Korean Air Lines Co.,* 93 F.3d 547, 553–54 (9th Cir. 1996).[4] We believe the Ninth Circuit got it right.

Assume general maritime law provides a survival action in some cases (we do not decide whether it does). Still, the effect of the Supreme Court's decision in *Higginbotham* must be evaluated. Nonpecuniary damages may be recovered under general maritime law, but not, the Court held, when the death is on the high seas. Then the Death on the High Seas Act controls and the judiciary may not evaluate the policy arguments in favor of, or against, allowing nonpecuniary damages. "Congress has struck the balance for us. It has limited survivors to recovery of their pecuniary losses." *Higginbotham,* 436 U.S. at 623, 98 S.Ct. at 2014. "The Death on the High Seas Act ... announces Congress' considered judgment on such issues as the beneficiaries, the limitations period, contributory negligence, survival, and damages." *Id.* at 625, 98 S.Ct. at 2015. *Moragne* developed general maritime law in a space Congress had not occupied. But "[t]here is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted. In the area covered by the statute, it would be no more appropriate to prescribe a different measure of damages than to prescribe a different statute of limitations, or a different class of beneficiaries." *Id.*

*Higginbotham* thus instructs the lower federal courts not to extend the general maritime law to areas in which Congress has already legislated. For deaths on the high seas, Congress decided who may sue and for what. Judge-made general maritime law may not override such congressional judgments, however ancient those judgments may happen to be. Congress made the law and it is up to Congress to change it.

At almost the same time as the Sixty–Sixth Congress passed the Death on the High Seas Act, it enacted the Jones Act, 46 U.S.C.App. § 688. *See* Death on the High Seas Act, ch. 111, 41 Stat. 537 (1920); Merchant Marine (Jones) Act, ch. 250, § 33, 41 Stat. 988, 1007 (1920). The Jones Act contains a survival provision applicable to certain maritime deaths. *See supra* note 3. A fair assumption is that the members of Congress who passed the Death on the High Seas Act understood the difference between wrongful death and survival actions. Their inclusion of a survival remedy in the Jones Act but not

---

**4.** Like the general maritime law, state wrongful death statutes may not be used to supplement Death on the High Seas Act remedies with nonpecuniary damages. *Tallentire,* 477 U.S. at 232, 106 S.Ct. at 2499. And although the Supreme Court has held that state survival and wrongful death statutes apply to at least some deaths occurring in territorial waters, *Yamaha,* — U.S. at ———, 116 S.Ct. at 626–29, it has not said whether state survival statutes can apply to deaths on the high seas, *see Tallentire,* 477 U.S. at 215 n. 1, 106 S.Ct. at 2490 n. 1. A few lower courts have allowed recovery under a state survival statute to supplement recovery under the Death on the High Seas Act. *See, e.g., Solomon v. Warren,* 540 F.2d 777, 792 n. 20 (5th Cir. 1976); *Dugas v. National Aircraft Corp.,* 438 F.2d 1386, 1388–92 (3d Cir.1971).

in the Death on the High Seas Act scarcely seems inadvertent.

*Higginbotham* stated that the Death on the High Seas Act expressed a congressional "judgment on such issues as . . . survival, and damages." 436 U.S. at 625, 98 S.Ct. at 2015. In support, the Court cross-referenced a footnote citing 46 U.S.C.App. § 765, a provision allowing a personal injury suit, initiated by a plaintiff who dies while the suit is pending, to be continued under the Act. A law professor has criticized the Court's statement as "casual," or "at best dictum and conceivably nothing more than an ill-advised gratuitous remark." Joseph F. Smith, Jr., *A Maritime Law Survival Remedy: Is There Life After Higginbotham?*, 6 MAR. LAW. 185, 196, 198 (1981). Dictum yes, ill-advised no. That the Death on the High Seas Act contains only a very limited survival provision is no reason for treating the Act as something other than an expression of legislative judgment on the extent to which survival actions are to be permitted. When Congress decides to go only so far it necessarily has decided to go no further.[5]

While the contours of plaintiffs' proposed survival action for deaths on the high seas are uncertain, they presumably would allow a decedent's estate to recover compensation for the decedent's injuries. This would necessarily expand the class of beneficiaries in the Death on the High Seas Act, which does not include decedents' estates. Yet *Higginbotham* held that "it would be no more appropriate to prescribe a different measure of damages than to prescribe . . . a different class of beneficiaries." 436 U.S. at 625, 98 S.Ct. at 2015. It was, to the Court, unthinkable that a legislatively-mandated class of beneficiaries could be judicially altered. Suits under the Act are "for the

*exclusive* benefit of the decedent's wife, husband, parent, child, or dependent relative." 46 U.S.C.App. § 761 (emphasis added). In a death on the high seas case, there is no relevant difference between a court's giving a decedent's nondependent niece a right of action under general maritime law, which is clearly impermissible, and allowing the decedent's estate to sue for the decedent's injuries under the general maritime law.

Perhaps plaintiffs envisage a survival action that would not alter the Death on the High Seas Act's beneficiary class. One might permit a decedent's personal representative to sue for damages suffered by the decedent, but only for the benefit of those named in the Act. For example, the Federal Employers' Liability Act and the Jones Act give a decedent's personal representative the right to recover survival damages for the benefit of a fixed class of surviving relatives. *See* 45 U.S.C. § 59; 46 U.S.C.App. § 688.[6] Such an approach could leave the Death on the High Seas Act's beneficiary class intact. But it would change the damages available to the Act's beneficiaries. No longer would damages be limited to "compensation for the pecuniary loss sustained by the persons for whose benefit the suit is brought," 46 U.S.C.App. § 762. The beneficiaries would also receive compensation for nonpecuniary losses sustained by others—their decedents. That result *Higginbotham* forecloses.

Because the Death on the High Seas Act is a "wrongful death" statute, plaintiffs insist it has no bearing on survival remedies. They have missed the point. That the Act provides remedies only to certain surviving relatives for their losses and provides no compensation for the decedent's own losses is the very reason why courts may not create a

---

**5.** One of the drafters of the Death on the High Seas Act explained the Act's unusual, limited survival provision. The Act originally required suits to be filed "within two years from the date of [the] wrongful act, neglect, or default." Ch. 111, § 3, 41 Stat. 537. The survival provision of § 765 preserved for defendants the benefits of the Act's restricted limitations period without creating an undue barrier for wrongful death actions in cases in which the death did not occur soon after the event causing the injury. In such cases, a suit filed within two years while the decedent was still alive would preserve the ac-

tion. *See* Robert M. Hughes, *Death Actions in Admiralty*, 31 YALE L.J. 115, 126 (1921).

**6.** Under 45 U.S.C. § 59:

Any right of action given by this chapter to a person suffering injury shall survive to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee, and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee. . . .

survival remedy. The Act explicitly limits beneficiaries to a particular group of surviving relatives, and it explicitly limits the recoverable damages to pecuniary losses suffered by the members of that group. These are the limits of recovery and a court may neither expand nor contract them. Calling the Act a wrongful death statute does nothing more than describe the manner in which Congress restricted the beneficiary class and the recoverable damages. It does not deprive those restrictions of their significance.

Plaintiffs also offer comparisons to the Jones Act, emphasizing that general maritime law remedies exist alongside Jones Act statutory remedies. The Jones Act provides compensation to seamen injured as a result of negligence, and in the event of death it provides both a wrongful death and a survival action. *See* 46 U.S.C.App. § 688; 45 U.S.C. §§ 51, 59. In *Miles,* the Supreme Court held that after *Moragne* a seaman's survivors could pursue a general maritime law wrongful death action alleging unseaworthiness (a strict liability theory), in addition to a Jones Act negligence claim. *Miles,* 498 U.S. at 29–30, 111 S.Ct. at 323–24. Plaintiffs may have identified an inconsistency in how the Court treats the Jones Act and how it treats the Death on High Seas Act. But this case involves the Death on the High Seas Act, and we therefore are bound to follow *Higginbotham.* Moreover, *Miles* severely restricted the extent to which the general maritime law may expand the remedies available under the Jones Act. Relying on *Higginbotham,* the Court refused to allow the decedent's survivors to recover nonpecuniary wrongful death damages under the general maritime law because they could not recover such damages under the Jones Act. *Miles,* 498 U.S. at 30–33, 111 S.Ct. at 324–26. So while the general maritime law permits recovery for violations of duties other than those imposed by the Jones Act, such recovery may not exceed the recovery that would be available under the Jones Act if it applied. It is thus uncertain how much mileage plaintiffs could get out of their Jones Act analogy even if we disregarded the Court's pronouncements in *Higginbotham.*

## II

Plaintiffs invoke South Korean law on the basis of this provision of the Death on the High Seas Act:

Whenever a right of action is granted by the law of any foreign State on account of death by wrongful act, neglect, or default occurring upon the high seas, such right may be maintained in an appropriate action in admiralty in the courts of the United States without abatement in respect to the amount for which recovery is authorized, any statute of the United States to the contrary notwithstanding.

46 U.S.C.App. § 764. As plaintiffs read § 764, it allows them to use an action under the Death on the High Seas Act to assert claims cognizable under foreign law. They have submitted the statement of a South Korean attorney that South Korean law would allow the recovery of damages for the decedents' pre-death pain and suffering and for the surviving relatives' mental anguish. The district court rejected the plaintiffs' submission as "irrelevant" in light of its determination that U.S. law applied. *Korean Air Lines Disaster,* 935 F.Supp. at 14 n. 2.

The case law regarding § 764 is not uniform. Some opinions seem to support plaintiffs' view of § 764. *See Heath v. American Sail Training Ass'n,* 644 F.Supp. 1459, 1467 (D.R.I.1986); *Noel v. Linea Aeropostal Venezolana,* 260 F.Supp. 1002, 1004–06 (S.D.N.Y. 1966); *Fernandez v. Linea Aeropostal Venezolana,* 156 F.Supp. 94, 96 (S.D.N.Y.1957); *Iafrate v. Compagnie Generale Transatlantique,* 106 F.Supp. 619, 622 (S.D.N.Y.1952). Other opinions support the view that § 761 and § 764 are mutually exclusive and that plaintiffs therefore may not simultaneously advance claims under both U.S. and foreign law. *See In re Air Crash Disaster Near Bombay, India on Jan. 1, 1978,* 531 F.Supp. 1175, 1185–88 (W.D.Wash.1982); *Bergeron v. Koninklijke Luchtvaart Maatschappij, N.V.,* 188 F.Supp. 594, 596–97 (S.D.N.Y.1960), *appeal dismissed,* 299 F.2d 78 (2d Cir.1962); *The Vulcania,* 41 F.Supp. 849 (S.D.N.Y. 1941), *modifying* 32 F.Supp. 815 (S.D.N.Y. 1940); *The Vestris,* 53 F.2d 847, 855–56 (S.D.N.Y.1931).

If plaintiffs were correct, § 764 would license them to pick and choose among provi-

sions of U.S. and South Korean law in order to assemble the most favorable package of rights against the defendant. That would be odd enough. But stranger still is the notion that South Korean law has any bearing on this case. Faced with *Zicherman*'s directive to make a choice-of-law determination, —— U.S. at ——, 116 S.Ct. at 637, the district court chose U.S. law, not South Korean law. Plaintiffs have not appealed this ruling. So how does South Korean law enter the picture? True, § 764 permits suits under foreign law when "a right of action is granted by the law of any foreign State." Since U.S. law, not South Korean law (or French law or Brazilian law), applies to this case, we are at a loss to understand how "a right of action is granted by the law of" South Korea or any other foreign country. If South Korean law does not apply to a suit, it can hardly grant rights to the parties. Once the choice-of-law determination is in favor of U.S. law, only U.S. law can grant plaintiffs any sort of right of action.

■ It is fair to ask what function § 764 serves if not the one plaintiffs imagine. If, as we have decided, § 764 cannot be used to inject foreign law into a case controlled by U.S. law, one might suppose it has no purpose. When foreign law governs a case, the court would not consider the various provisions of the Death on the High Seas Act. But § 764 is not without significance.

The provision originated as an amendment recommended by the Senate Committee on the Judiciary. The Committee's report took the position (no longer current) that Congress had no power to create a right of action allowing the recovery of damages against foreigners or foreign vessels for deaths occurring on the high seas. S. REP. No. 66–216, at 4 (1919). The report also recognized that American courts permitted suits concerning foreign vessels to proceed under the law of the vessel's home country. *Id.* at 4–5. For example, the claims in *La Bourgogne*, 210 U.S. 95, 28 S.Ct. 664, 52 L.Ed. 973 (1908), were against a French vessel and its owners for deaths occurring on the high seas. The Supreme Court held that while U.S. law at that time did not recognize a wrongful

death cause of action, wrongful death damages were available under French law in a proceeding in a U.S. court. *Id.* at 138–40, 28 S.Ct. at 679–80. Section 764 was the legislative response to decisions permitting the owners of such foreign vessels to take advantage of U.S. statutes limiting their liability, *see, e.g., Oceanic Steam Navigation Co. v. Mellor,* 233 U.S. 718, 731, 34 S.Ct. 754, 755, 58 L.Ed. 1171 (1914) (*"The Titanic"*).[7] The Committee report explained § 764 this way: "[A]s the Supreme Court has held that the limited liability statute of the United States applies to foreign ships seeking such limitation of liability in our courts, the committee recommends that the bill be amended by the insertion of [§ 764]." S. REP. No.66–216, at 5.

It was immediately recognized that § 764 was "superfluous" insofar as it provided that U.S. courts would hear suits under foreign law in cases involving foreign vessels. Hughes, *supra,* 31 YALE L.J. at 118, 122; *see also* Calvert Magruder & Marshall Grout, *Wrongful Death Within the Admiralty Jurisdiction,* 35 YALE L.J. 395, 423–24 (1926). As the Senate Committee realized, that was already the practice. The real force of § 764 was its barring foreign vessel owners from taking advantage of American limitation of liability laws.

Another function of § 764, not discussed in the legislative history, is to require foreign law actions for wrongful deaths on the high seas to be brought in admiralty, at least if the plaintiffs wish to prevent the defendants from limiting their liability. *See The Silverpalm,* 79 F.2d 598, 600 (9th Cir.1935); *Bergeron,* 188 F.Supp. at 597–98; *Iafrate,* 106 F.Supp. at 621–22; *Egan v. Donaldson Atlantic Line, Ltd.,* 37 F.Supp. 909 (S.D.N.Y. 1941). *But see Powers v. Cunard S.S. Co.,* 32 F.2d 720 (S.D.N.Y.1925).

Section 764 also made it explicit that American courts would continue to hear these suits under foreign law. While the courts' authority to do so did not depend on § 764, without § 764 the Death on the High Seas Act would have been open to the judicial interpretation that it was a congressional attempt—albeit an illegitimate one in the

---

7. Under Rev. Stat. § 4283 (1878) (current version at 46 U.S.C.App. § 183), when a loss or injury occurred "without the privity, or knowledge" of a vessel owner, the owner could limit its liability to the value of its interest in the vessel and "her freight then pending."

eyes of the Senate Committee—to impose a new American law of wrongful death on all suits brought in U.S. courts, including those against foreign defendants. Some maritime statutes of the period explicitly applied to foreigners and their vessels. *See, e.g.,* Act of Mar. 4, 1915, ch. 153, § 4, 38 Stat. 1164, 1165. Others, like the limitation of liability statute (which at that time applied to "the owner of any vessel," Rev. Stat. § 4283), were less clear on the point, but the courts interpreted them to apply to foreigners as well as Americans, *see, e.g., The Titanic,* 233 U.S. at 731, 34 S.Ct. at 755. Thus, § 764 made it certain that the substantive provisions of the Death on the High Seas Act were not to displace foreign law in those cases in which foreign law already applied.

We therefore find no reason for concluding that § 764 requires the abandonment of normal choice-of-law principles, as plaintiffs suggest, allowing them to combine the most favorable elements of U.S. law, South Korean law, and perhaps also any other nation's law. Section 764 and foreign law play no role once a court determines that U.S. law governs an action.

*Affirmed.*