1254

Michael GAVIGAN as Personal Repre-
sentative of the Estate of Joseph
Thomas Gavigan, Jr., Plaintiff,

v.

CELEBRITY CRUISES
INC., Defendant.

Case No. 11–21460–CIV.

United States District Court,
S.D. Florida.

Oct. 12, 2011.

Keith Steven Brais, Richard Dennis Rusak, Brais & Associates PA, Miami, FL, for Plaintiff.

Darren Wayne Friedman, Danielle Portia Rubin, Foreman Friedman, PA, Lauren J. Smith, Hicks, Porter, Ebenfeld & Stein, Miami, FL, for Defendant.

## ORDER GRANTING MOTION TO DISMISS

PATRICIA A. SEITZ, District Judge.

This case involves an illness resulting in death during a pleasure cruise. Joseph Gavigan, Jr., a passenger aboard the cruise ship *Solstice*, allegedly contracted Norovirus and died while aboard that vessel. The personal representative of the estate has filed suit and asserts three claims under the Death On the High Seas Act ("DOHSA"), 46 U.S.C. § 30302 and one claim for negligence under Maltese law. Currently before the Court is Celebrity's Motion to Dismiss the Amended Complaint [DE–13]. Celebrity seeks to dismiss any claim for damages on behalf of adult children, claims that would hold Celebrity liable for the shipboard doctors' acts and the Maltese law claim. Having reviewed the parties' papers and the applicable law, the Court will grant the motion to dismiss as follows.

## I. BACKGROUND FACTS

While Plaintiff does not allege many specific facts about the events underlying the suit, the following are alleged and accepted as true for the purposes of resolving Celebrity's motion. On January 16, 2011, the *Solstice*, a vessel registered under the laws of Malta, departed Ft. Lauderdale. Am. Compl., at ¶ 31. At some point during the voyage, an unnamed passenger with symptoms of Norovirus sought treatment from an unnamed doctor. *Id.* The doctor "inappropriately prescribed Imodium" to that passenger, which caused this passenger to become more ill. *Id.*

Later, on January 23, 2011, after returning to port, the patient was hospitalized. *Id.* This "instance of improper medical care" was allegedly reported to Celebrity, but the pleadings fail to provide any further information on this issue.

Seven days later, on January 30, 2011, Joseph Gavigan, Jr., boarded the *Solstice* in Ft. Lauderdale, Florida. *Id.* at ¶¶ 9–12. Although a number of passengers on the cruise immediately preceding Gavigan's contracted Norovirus and/or displayed Norovirus symptoms while onboard the *Solstice*, Celebrity failed to perform the following acts prior to Gavigan's voyage: (1) screen passengers and crew members boarding the vessel to exclude those with Norovirus symptoms; (2) sanitize/disinfect *Solstice*'s common areas and his cabin; (3) sanitize/disinfect plates, cups, food trays, utensils, ice machines and drinking fountains; (4) educate Gavigan on what precautions to take to lessen exposure to Norovirus; and (5) warn Gavigan of the health risks associated with Norovirus. *Id.* at ¶ 23(a)-(c), (f) and (g).

During Gavigan's voyage, a Norovirus outbreak occurred on the *Solstice*. *Id.* at ¶ 14. Celebrity allegedly failed to quarantine passengers and crew members infected with Norovirus or exhibiting symptoms of Norovirus. On February 3, 2011, Gavigan became severely ill with Norovirus requiring immediate medical attention. *Id.* at ¶ 15. Gavigan reported his illness to Celebrity "and was provided limited medical treatment on board the vessel." *Id.* at ¶ 16. The Amended Complaint asserts that the "ship's doctor ordered a course of treatment that was medically improper and caused [Gavigan's] condition to worsen." *Id.* at ¶ 17. Celebrity also failed to provide a medical facility large enough for Gavigan to be closely monitored by the ship's personnel. *Id.* at ¶23(h). Gavigan died on February 5, 2011, allegedly as a

result of the Norovirus he contracted on the *Solstice. Id.* at ¶ 18.

## II. ADMIRALTY JURISDICTION

■ Plaintiff advances three separate DOHSA claims—Negligence (Count I). Negligent Selection of Doctors (Count II) and Negligence—Apparent Agency (Count III). In Count IV of the Amended Complaint, Plaintiff seeks to recover for negligence under Chapter 16, § 1046 of the Maltese Civil Code. Am. Compl., ¶ 26. Although the parties agree admiralty jurisdiction applies here, the Court "has an independent duty to ensure admiralty jurisdiction exists before applying admiralty law." *Doe v. Celebrity Cruises, Inc.,* 394 F.3d 891, 900 (11th Cir.2004)

■ The United States Constitution confers federal courts with the authority to hear "all Cases of admiralty and maritime Jurisdiction." U.S. Const. art. III, § 2. "Congress has embodied that power in a statute," *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 531, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995), affording district courts original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled," 28 U.S.C. § 1333(1). "[A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy the conditions both of location and of connection with marine activity." *Grubart,* 513 U.S. at 534, 115 S.Ct. 1043. The connection test is easily satisfied as Celebrity, a cruise ship operator, engages in maritime commerce. *See Doe,* 394 F.3d at 900 ("[T]he cruise line industry is maritime commerce[.]"). The location test is also satisfied because the tort here occurred on navigable water. *Grubart,* 513 U.S. at 534,

115 S.Ct. 1043. Admiralty jurisdiction therefore exists.

## III. CHOICE OF LAW—DISMISSAL OF MALTESE LAW CLAIM

■ Generally, when a plaintiffs claims support admiralty jurisdiction, the court will apply federal admiralty law. *See Doe,* 394 F.3d at 902 ("[T]his Court has admiralty jurisdiction over the case ... [c]onsequently, we apply federal admiralty law[.]"). Plaintiff asserts three claims under DOHSA and U.S. law and one for negligence under the law of Malta. In response to Celebrity's motion to dismiss the Maltese law claim, Plaintiff concedes that U.S. law governs his first three claims, but maintains that the Court should allow him to simultaneously seek relief under the law of Malta for the Fourth claim. Pl.'s Mot., p. 4. [DE–13]. To avoid dismissal of the Fourth claim, Plaintiff attempts to distinguish between Celebrity's "negligent acts [ ] which occurred within the territorial waters and/or on United States soil" and those "negligent actions which occurred ... while on the high seas or in a non-United States port." [1] Mot., p. 4 [DE–13]. Plaintiff essentially argues that DOHSA governs the acts occurring within U.S. territorial waters but not the acts occurring on the high seas, which are governed by Maltese law.

Plaintiffs argument ignores the text and title of the applicable statute (DOHSA) and contradicts the allegations of his own pleadings. By its terms, DOHSA applies to acts occurring "beyond 3 nautical miles from the shore of the United States" and, as the title suggests, applies to claims occurring on the "high seas." 46 U.S.C. § 30302 (2006). Moreover, in the Amended Complaint, Plaintiff alleged that Joseph

1. No support exists for Plaintiff's attempt to compartmentalize the allegations supporting the DOHSA claims from the allegations supporting the Maltese law claim. The allegations of Claim I and Claim IV are almost identical.

Gavigan's "death occurred on the high seas" such that "the Death on the High Seas Act applies to Plaintiff's wrongful death claim[.]" Am. Coml., ¶ 20. Why Plaintiff would now argue, in an attempt to save his claim under Maltese law from dismissal, that DOHSA does not govern claims on the high seas remains unexplained on this record.

 While it is true that pursuant to DOHSA a plaintiff may recover damages under foreign law, *see* 46 U.S.C. § 30306, that section "plays no role once a court determines that U.S. law governs an action." *Dooley v. Korean Air Lines Co., Ltd.,* 117 F.3d 1477, 1484 (D.C.Cir.1997). No dispute exists here that U.S. law governs *most* of this action, but Plaintiff seeks to have the Court simultaneously apply Maltese law to one aspect of his case. Well-reasoned authorities, however, reject this approach to a choice-of-law analysis. *Dooley,* 117 F.3d at 1484–85 (rejecting as impermissible a plaintiffs attempt to "combine the most favorable elements of U.S. law" with a foreign law to "assemble the most favorable package of rights against the defendant."); *Balachander v. NCL (Bahamas) Ltd.,* 800 F.Supp.2d 1196, 1201–02 (S.D.Fla.2011)(DOHSA case where Bahamian law claim dismissed because U.S. law governed). This Court must similarly reject plaintiff's invitation to cobble together U.S. law and Maltese law to provide him the best chance at success in this case. *Id.* Either the law of Malta governs this action or it doesn't.

Given that Plaintiff has failed to advance any choice of law analysis to suggest that Maltese law might govern this case, and concedes that U.S. law governs most of his claims, the Court will dismiss Plaintiff's fourth claim for relief.[2] *Dooley,* 117 F.3d at 1485; *Balachander,* 800 F.Supp.2d at 1201–02.

## IV. LEGAL STANDARD

The purpose of a motion to dismiss filed pursuant to Rule 12(b)(6) is to test the facial sufficiency of a complaint. Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the "grounds" for his entitlement to relief, and a "formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Once a court "identifies pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," it must determine whether the well-pled facts "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). A complaint can only survive a 12(b)(6) motion to dismiss if it contains factual allegations that are "enough to raise a right to relief above the speculative level, · on the assumption that all the [factual] allegations in the complaint are true." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. However, a well-pled complaint survives a motion to dismiss "even if it strikes a savvy judge

---

**2.** A court is to apply "normal choice-of-law principles" to determine whether U.S. law or foreign law "governs an action" under DOHSA. *Dooley,* 117 F.3d at 1485. The Supreme Court established a choice-of-law analysis for maritime actions in *Lauritzen v. Larsen,* 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), which lists seven factors that, "alone or in combination, are generally conceded to influence choice of law to govern ... a maritime tort claim": (1) the place of the wrongful act;

(2) the law of the flag; (3) the allegiance or domicile of the injured party; (4) the allegiance of the defendant shipowner; (5) the place of contract; (6) the inaccessibility of the foreign forum; and (7) the law of the forum. 345 U.S. at 582–92, 73 S.Ct. 921. Plaintiff has not addressed a single factor under *Lauritzen,* but Celebrity has and those factors demonstrate that U.S. law governs. *See* Reply, pp. 4–5 [DE–15]

that actual proof of these facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955.

## V. LEGAL ANALYSIS

### A. DAMAGES RESULTING FROM LOSS OF FATHERLY NURTURE AND GUIDANCE

Plaintiff seeks to recover as damages in Counts I, II and III, the loss of fatherly nurture and guidance for Gavigan's eight adult children. Am. Compl., ¶ 26. Celebrity argues that DOHSA, as a general matter, does not allow adult children to recover for loss of nurture and guidance. Plaintiff relies on *Solomon v. Warren*, 540 F.2d 777, 789 (5th Cir.1976) and *Kallas v. Carnival Corp.*, No. 06–20115, 2007 WL 1526699, *2–3 (S.D.Fla. May 23, 2007) to argue that DOHSA does permit adult children to recover pecuniary damages for loss of parental support. Plaintiff maintains he has pled "sufficient facts entitling him to relief[.]" Resp., p. 3 [DE–13].

 Plaintiff is correct that adult children may recover for loss of monetary parental support. Plaintiff, however, has failed to allege sufficient facts to survive the motion to dismiss. The decisions cited provide that "whatever may be the rule for minor children, it is clear that those who have reached their majority must be very specific to show that their parents' guidance had a pecuniary value beyond the irreplaceable values of companionship and affection." *Kallas*, 2007 WL 1526699 at *2 (quoting *Solomon*, 540 F.2d at 789)(internal quotations omitted). Plaintiff merely alleged that all eight of the adult children sustained a "loss of fatherly nurture and guidance" and "will suffer a financial loss as a result of the inability" to receive that guidance. Am. Compl., ¶ 26(b). These conclusory allegations are insufficient to raise the right to relief above the speculative level. *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. Plaintiff alleges no facts de-

scribing the any aspect of the "fatherly nurture and guidance" that any of the adult children would have received if not for the death of their father. There are also no facts connecting that lack of guidance to a subsequent financial loss. Plaintiff must supply the missing facts to survive a motion to dismiss. The Court will therefore dismiss Claims I, II and III with leave to re-plead subject to the following discussion.

### B. DOHSA CLAIMS

As already noted, Plaintiff's DOHSA claims encompass three different theories of negligence: negligent selection and retention of shipboard doctor(s), negligence based on apparent agency and a catch-all negligence claim. These theories of liability all seek the same award of damages for wrongful death. Celebrity seeks to dismiss or strike specific paragraphs within Count I and to dismiss Counts II and III in their entirety.

#### i. DISMISSAL OF PARAGRAPHS 16, 17 AND 23(H) OF COUNT I

 Celebrity asks the Court to dismiss Count I to the extent Plaintiff seeks to hold Celebrity liable for the negligence of the shipboard doctors. Specifically, Celebrity directs the Court to paragraphs 16, 17 and 23(h) of the Amended Complaint. Plaintiff rejects Celebrity's characterization of these paragraphs and asks the Court to deny Celebrity's request. Plaintiff maintains that paragraph 16 is merely background information; paragraph 17 is expressly omitted from Count I; and Paragraph 23(h) involves allegations of Celebrity's negligence, not that of a shipboard doctor. Resp., pp. 7–8. Paragraphs 16 and 17 pose no problem here, but paragraph 23(h) must be stricken for a reason slightly different than the one advanced by Celebrity. Paragraph 23(h) provides that Celebrity breached a duty to maintain the cruise ship in a safe condition by failing to

provide a medical facility "large enough" for Joseph Gavigan to be closely monitored by the ship's medical personnel. Am. Compl., ¶ 23(h). The Court agrees with the recent decision by Chief Judge Federico A. Moreno in *Hill v. Celebrity Cruises, Inc.*, No. 09–23815 (S.D.Fla. July 8, 2011) and concludes that no such duty exists. Because Celebrity owed no duty to Plaintiff to provide a facility of any particular size, the Court grants Celebrity's motion to dismiss/strike paragraph 23(h) with prejudice.

## II. NEGLIGENT SELECTION/RETENTION OF SHIPBOARD MEDICAL DOCTORS

 Celebrity seeks to dismiss the second claim for relief—negligent selection/retention of shipboard doctors—for failure to state a claim. Celebrity concedes that a cruise ship operator that provides a physician for its passengers has a duty to use reasonable care in selecting competent medical staff. Mot., p. 6 (citing *Barbetta v. S/S Bermuda Star*, 848 F.2d 1364, 1369 (5th Cir.1988)). But argues that Plaintiff's Amended Complaint only alleges legal conclusions in support of the claim that Celebrity selected unqualified or improperly trained doctors. Celebrity also takes issue with the adequacy of the allegations concerning negligent retention. The Court agrees with the bulk of Celebrity's arguments. Plaintiff has failed to allege facts to state either a claim for negligent selection or a claim for negligent retention. As to the negligent selection claim, Plaintiff only asserts conclusory al-

legations that, for example, Celebrity "failed to properly investigate, vet [or] inquire as to the qualifications of the shipboard doctor(s)[.]" *See* Am. Compl. ¶ 29(a). Plaintiff fails to provide any factual information concerning the doctor that Celebrity negligently selected-neither naming the doctor nor describing in any way the doctor's training and education. The absence of any facts to support a negligent selection claim requires dismissal of this portion of Count II.

 The Court must also dismiss Plaintiffs negligent retention claim. Plaintiff alleged that the same doctors who treated Joseph Gavigan improperly treated another passenger suffering from the same illness on a prior voyage. *Id.* at ¶ 31. Plaintiff further alleged that Celebrity knew that the doctors provided improper medical care before Joseph Gavigan boarded the *Solstice*, but failed to remove or replace those doctors. *Id.* While Plaintiff does provide some factual information for this claim, he has not provided enough to raise the right to relief above the speculative level. *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. The Amended Complaint lacks sufficient factual information about what Celebrity knew a doctor had done or not done and when Celebrity possessed that information. Moreover, the Amended Complaint lacks the factual allegations that would support a claim that any doctor performed his or her duties so poorly that Celebrity should have *immediately* relieved the doctor of all responsibility for treating any other patients.[3] The facts

---

**3.** While it is well-settled that a shipowner may be liable for negligently hiring and/or retaining an independent contractor, there exists "a paucity of well-developed jurisprudence delineating the specific contours and elements" of such a claim. *Smolnikar v. Royal Caribbean Cruises Ltd.*, 787 F.Supp.2d 1308, 1318 (S.D.Fla.2011). At a minimum, however, to state a claim for negligent hiring/retention a plaintiff must allege facts that show: "(1) the

contractor was incompetent or unfit to perform the work; (2) the employer knew or reasonably should have known of the particular incompetence or unfitness; and (3) the incompetence or unfitness was a proximate cause of the plaintiffs injury." *Id.* Where, as here, the independent contractor is a doctor, it must be remembered that shipowners do not "possess expertise in supervising the doctor in his practice of medicine." *Doonan v.*

pled are therefore insufficient to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949. Both the negligent selection and negligent retention claims are dismissed, but the Court will give Plaintiff leave to re-plead those claims if there are facts to support such a claim.

## III. APPARENT AGENCY

Celebrity also moves to dismiss Count III, which seeks to hold Celebrity liable for the negligent acts of the shipboard doctors based on a theory of apparent agency. Celebrity maintains that it is a well-settled rule of maritime law that a cruise ship operator cannot be vicariously liable for the conduct of a ship's doctor. Mot., p. 5. Relying on *Barbetta* and cases from this District, Celebrity argues that this rule bars apparent agency claims. *Id.* at pp. 7–11. Plaintiff, however, directs the Court to other opinions from this District where similar apparent agency claims have survived a motion to dismiss. Resp., pp. 12–13.

The question presented by Celebrity's motion has divided the Judges of this District. Judge Cecilia Altonaga and the undersigned Judge have denied motions to dismiss vicarious liability claims premised on shipboard doctors' negligence under a theory of apparent agency. *See, e.g. Lobegeiger v. Celebrity Cruises, Inc.*, No. 11–21620, 2011 WL 3703329, *9 (S.D.Fla. Aug. 23, 2011)(Altonaga, J.); *Rinker v. Carnival Corp.*, No. 09–23154 (S.D.Fla. June 18, 2010)(Seitz, J.). Other Judges form this District, however, have read *Barbetta* to

require dismissal of such apparent agency claims. *See, e.g., Wajnstat v. Oceania Cruises, Inc.*, No. 09–21850, 2011 WL 465340, *4 (S.D.Fla. Feb. 4, 2011)("[I]t does not matter whether the ship's physician is an actual agent, apparent agent, or otherwise[;] under maritime law the shipboard doctor's liability is not [to] be imputed to the carrier.")(Cooke, J.). Without resolving this split of authority, Plaintiff's apparent agency claim must be dismissed for failing to plead sufficient facts to state a claim for relief.

 As Judge Altonaga noted, "[a]lthough cruise lines can be held liable for the negligence of shipboard doctors under an apparent agency theory, these claims are difficult to establish." *Lobegeiger*, 2011 WL 3703329 at *10 (citation and quotations omitted). Under general maritime law, in order to state a claim premised on apparent agency, a plaintiff must demonstrate:

> 1) the alleged principal ma[de] some sort of manifestation causing a third party to believe that the alleged agent had authority to act for the benefit of the principal, 2) that such belief was reasonable, and 3) that the claimant reasonably acted on such belief to his detriment.

*Id.* (citation omitted). Here, Plaintiffs allegations fail to satisfy the third element. While Plaintiff alleged that Gavigan "relied upon [Celebrity's] representations" that the doctors were Celebrity's agents, the Amended Complaint fails to contain the necessary factual allegations describing his reliance on the *agency* relationship to his detriment.[4] *Id.*, at *12 ("A party may

---

*Carnival Corp.*, 404 F.Supp.2d 1367, 1370 (S.D.Fla.2005). Thus, the allegations related to the shipowner's knowledge must be based on facts that a similarly situated, reasonable person would understand to demonstrate that the doctor was unfit to treat patients.

4. In an effort to support his apparent agency claim, Plaintiff alleges in paragraph 42 of the Amended Complaint that Gavigan "relied

upon the care and skill of the shipboard doctors." Am. Compl., ¶ 42. But Plaintiff misapprehends the inquiry here, the issue is whether Gavigan relied on, or changed his position in reliance on, his alleged belief that the doctor was Celebrity's agent. *Warren*, 1995 WL 688421 at *3. This is a difficult standard to satisfy and even more difficult where the patient is deceased.

demonstrate such reliance by showing a change of position, which may include any *payment of money, expenditure of labor, suffering a loss or subjection to legal liability.'" (quoting *Warren v. Ajax Navigation Corp.*, No. 91–0230, 1995 WL 688421, at *3 (S.D.Fla. Feb. 3, 1995)(Ryskamp, J.))). Moreover, simply repeating the term "reliance" or the phrase "relied upon" throughout the pleadings fails to satisfy the burden here. *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 ("formulaic recitation of the elements of a cause of action will not do."). Facts, rather than conclusory allegations are necessary to avoid dismissal of this claim. Therefore, the Court will dismiss Count III with leave to re-plead if there are facts to support such a claim.

## VI. CONCLUSION

Accordingly, it is

ORDERED THAT Defendant's Motion to Dismiss Plaintiff's Amended Complaint [DE–10] is GRANTED and all of Plaintiffs Claims are DISMISSED with leave to re-plead on or before **October 24, 2011,** only allowed where specified above.